GREEN SPRING FARMS, A Wisconsin General Partnership Consisting of Galen C. Hartung, Donald J. Hartung, Daniel J. Hartung, James P. Noltner, Robert J. Hartung, Randy L. Hartung, Stephen J. Hartung and John Hartung, Plaintiffs-Respondents,

v.

SPRING GREEN FARMS ASSOCIATES LIMITED PARTNERSHIP, A Wisconsin Limited Partnership, Defendant,

Robert R. LEHMAN, General Partner, Defendant-Appellant,

John G. OLIVER, General Partner, Main Bank-Chicago, n/k/a Cole-Taylor Bank, an Illinois Banking Corporation, Defendants.

Court of Appeals

*No. 91-1598. Submitted on briefs March 26, 1992.—Decided October 29, 1992.*

(Also reported in 492 N.W.2d 392.)

28

29

For the defendant-appellant the cause was submitted on the briefs of *Roger L. Gierhart and W. Scott McAndrew* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

For the plaintiffs-respondents the cause was submitted on the briefs of *Paul W. Schwarzenbart* of *Lee, Kilkelly, Paulson & Kabaker, S.C.* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Robert R. Lehman appeals from a judgment entered May 22, 1991, foreclosing the interest of Spring Green Farm Associates (SGFA) in a land contract between Green Spring Farms (GSF) and SGFA. Lehman is a general partner in SGFA. The judgment struck Lehman's affirmative defenses and dismissed his counterclaims for rescission of the land contract, restitution, and money damages. Lehman stipulated to entry of the judgment, subject to his right to pursue appellate review of a circuit court order granting GSF's motion to strike his request for a jury trial on his counterclaims. The judgment provides that if Lehman prevails on this appeal, "all counterclaim issues shall be tried to a jury."

The circuit court concluded that by filing his legal counterclaims in GSF's equitable foreclosure action, Lehman waived his right to a jury trial of those counterclaims. As an alternative ground for affirming the judgment, GSF argues the circuit court should have granted its summary judgment motion dismissing Lehman's counterclaims. GSF argues that the counterclaims fail to state proper claims and that Lehman failed to rebut GSF's *prima facie* defense that it did not know of the alleged salmonella contamination which Lehman claims GSF intentionally concealed from SGFA.

We conclude Lehman did not waive his right to a jury trial of his legal counterclaims because he was compelled by the doctrine of collateral estoppel to assert his counterclaims in this action in order to preserve them. We further conclude that Lehman's counterclaims state

claims upon which relief may be granted, and that a disputed issue of material fact exists as to whether GSF intentionally failed to disclose to SGFA at the time of sale that its property was contaminated with salmonella bacteria. We therefore reverse the judgment and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

On May 1, 1985, SGFA entered into a land contract with GSF to purchase a dairy farm near Spring Green, Wisconsin, and took possession of the farm. During the summer of 1987, SGFA experienced a salmonella[1] outbreak among its livestock, resulting in the destruction of some animals, extensive veterinary care for others, and considerable financial losses.

In November 1988, SGFA defaulted on its land contract payments. GSF accelerated the entire balance due and brought this action against SGFA, Lehman and others for specific performance. Lehman defended, alleging affirmative defenses and making counterclaims based on GSF's alleged failure to disclose a 1982 outbreak of salmonella in its dairy herd which, Lehman claims, caused the 1987 outbreak.

In his first counterclaim, Lehman alleges that prior to the date of sale, GSF knew that its property was contaminated by salmonella bacteria, but intentionally failed to disclose the contamination with intent to deceive SGFA and induce it to enter into the land contract. He requested that the circuit court rescind the contract and restore the status quo. In his second, third and fourth counterclaims, Lehman seeks money dam-

---

[1] Salmonella is a genus of highly contagious enteric bacteria commonly found in domestic farm animals, including dairy cattle.

ages resulting from GSF"s intentional and negligent misrepresentations and failure to disclose the contamination.

In the summer of 1982, GSF"s veterinarians identified salmonellosis as the cause of death of several of GSF"s calves. However, GSF contends that at the time of sale on May 1, 1985, it had no knowledge that its property continued to be contaminated by salmonella bacteria. It further claims that if it had such knowledge, it had no duty to disclose that knowledge to SGFA prior to sale.

The circuit court denied GSF"s summary judgment motion because it concluded that Lehman raised a disputed issue of material fact as to whether the property was contaminated by salmonella bacteria at the time of sale. On May 22, 1991, the circuit court entered the stipulated judgment from which Lehman appeals.

## RIGHT TO JURY TRIAL

Article I, section 5  of the Wisconsin Constitution provides that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy . . .."[2] Article I, section 5 secures the right of trial by jury only where it could have been claimed as a matter of right at the time the constitution was adopted. *Mead v. Walker*, 17 Wis. 195, [*189], 197, [*190-91] (1863). It is well settled that the right to a trial by jury does not extend to equitable actions. *Neff v. Barber*, 165 Wis. 503, 506, 162 N.W. 667, 668 (1917).

---

[2] The federal constitutional guarantee of a jury trial in civil cases does not apply to the states. *Hardware Dealers Mut. Fire Ins. Co. v. Glidden Co.*, 284 U.S. 151 (1931).

"[A] legal counterclaim in an equitable action does not necessarily entitle the counterclaimant to a jury trial . . .." *Tri-State Home Improvement Co. v. Mansavage*, 77 Wis. 2d 648, 660, 253 N.W.2d 474, 479 (1977) (citing *Mortgage Assocs. v. Monona Shores*, 47 Wis. 2d 171, 176-78, 177 N.W.2d 340, 345-46 (1970)). In *Monona Shores*, the court limited the holding in *Neas v. Siemens*, 10 Wis. 2d 47, 102 N.W.2d 259 (1960), where the court held the defendants were entitled to a jury trial on their fraud counterclaim in a foreclosure action on a land contract for the sale of a farm. The court said:

> We are not here concerned with a legal counterclaim but we point out that *Neas* probably states too broadly a principle in respect to a legal counterclaim in an equity action. There is considerable logic and merit in the view that when a defendant pleads a legal counterclaim in an equitable action *which he is not compelled to do* he waives any right to a jury trial he would have if he had brought the action separately.

*Monona Shores*, 47 Wis. 2d at 177, 177 N.W.2d at 345 (emphasis added).

The court discussed cases construing Rule 13(a) of the Federal Rules of Civil Procedure, holding that where a defendant is required under the rule to assert a counterclaim, he or she is entitled to a jury trial if the counterclaim asserts a legal right in an equitable suit. *Id.*, 177 N.W.2d at 346. The court said: "If, however, the defendant is under no such compulsion and asserts the legal right in a counterclaim in an equity suit, he thereby waives his right to a jury trial on that issue." *Id.*

■ We conclude that where a counterclaimant is compelled to raise his or her claims by the doctrine of collat-

eral estoppel,[3] that compulsion does not result in the waiver of the counterclaimant's right to a jury trial. In the 1976 revision of the Wisconsin Rules of Civil Procedure, 67 Wis. 2d 587 (1976), the Wisconsin Supreme Court did not adopt the federal compulsory counterclaim rule. *See* sec. 802.07(1), Stats. The Judicial Council Civil Rules Committee declined to recommend the compulsory counterclaim rule because the committee felt that the purpose of compulsory counterclaims—disposing of all aspects of a single litigable transaction or occurrence in a single action—"is promoted in Wisconsin law by the rules of collateral estoppel." Charles D. Clausen and David P. Lowe, *The New Wisconsin Rules of Civil Procedure: Chapters 801-803*, 59 Marq. L. Rev. 1, 58 (1976) (citing J. CONWAY, WISCONSIN AND FEDERAL CIVIL PROCEDURE, ch. 85, at 85-1—85-6 (1966)).

Wisconsin's collateral estoppel rules conform to what the RESTATEMENT(SECOND) OF JUDGMENT'S Reporters term "a common-law compulsory counterclaim rule." Section 22(2) of the Restatement proposes that:

> A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if: . . . (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment and would impair rights established in the initial action.

RESTATEMENT (SECOND) OF JUDGMENTS § 22(2) (1982). Comment f explains that:

---

[3] Collateral estoppel refers to the effect of a prior judgment precluding relitigation of an issue litigated and decided. *In re T.M.S.*, 152 Wis. 2d 345, 350 n.5, 448 N.W.2d 282, 284 n.5 (Ct. App. 1989).

> The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment . . . or by depriving the plaintiff in the first action of property rights vested in him under the first judgment . . ..

*Id.* at § 22 comment f. The Reporters' Note states that § 22(2)(b) "represent[s] an effort to articulate the bases in precedent and policy for what might be termed a common-law compulsory counterclaim rule." *Id.*

We conclude that § 22(2)(b) of the Restatement describes the situation present in this case. If Lehman is allowed in a later action to attack GSF's foreclosure judgment on grounds of fraud in inducement of the land contract, his successful prosecution of that action would nullify the judgment and deprive GSF of property rights vested in it under the judgment. He must, therefore, assert his claim in this action or lose it.

Requiring Lehman to plead his fraudulent misrepresentation claims in this action accomplishes the objectives of compulsory counterclaim rules of procedure. "The objective of the Federal Rules with respect to counterclaims is to provide complete relief to the parties, to conserve judicial resources and to avoid the proliferation of lawsuits." *Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d 1279, 1282 (D.C. Cir. 1973). These are likewise the objectives of collateral estoppel. *Kichefski v. American Family Mut. Ins. Co.*, 132 Wis. 2d 74, 79, 390 N.W.2d 76, 78 (Ct. App. 1986). Thus, because under Wisconsin law collateral estoppel has the same effect as a statute or rule requiring pleading of compulsory counterclaims, defendants who are required to plead legal counterclaims in an

36

equitable action or lose those claims are entitled to a jury trial of their claims.

## GSF's RIGHT TO SUMMARY JUDGMENT

GSF urges as an alternative ground for affirming the judgment that the circuit court should have granted it summary judgment dismissing Lehman's counterclaims. GSF argues that it had no duty to disclose to SGFA that its property was contaminated with salmonella bacteria at the time of sale. It also contends that Lehman failed to rebut its *prima facie* case for summary judgment.

The path a reviewing court must take in deciding a motion for summary judgment is well marked. *Grams v. Boss*, 97 Wis. 2d 332, 294 N.W.2d 473 (1980); *In re Cherokee Park Plat*, 113 Wis. 2d 112, 334 N.W.2d 580 (Ct. App. 1983). Our first stop along that path is at the complaint, or in this case, at Lehman's counterclaims. *Grams*, 97 Wis. 2d at 339, 294 N.W.2d at 476.

We examine Lehman's counterclaims to determine whether they state proper claims. We determine this question as we would determine a motion to dismiss a complaint for failure to state a claim. *Halker v. Halker*, 92 Wis. 2d 645, 649-50, 285 N.W.2d 745, 747-48 (1979). To determine if a complaint should be dismissed for failure to state a claim upon which relief can be granted, the facts pled are taken as admitted. *Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985). A counterclaim should be dismissed only when it is clear from the pleadings that under no conditions can the counterclaimant recover. *Halker*, 92 Wis. 2d at 650, 285 N.W.2d at 748.

In his counterclaims, Lehman alleges that some or all of GSF's partners knew of the salmonella contamination prior to the sale of the property, and that GSF

intentionally did not disclose the contamination to deceive SGFA and to induce it to enter into the land contract. For summary judgment analysis, we assume that these facts are true.

We first consider GSF's argument that it owed no duty of disclosure to SGFA. GSF relies on language found in *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 288 N.W.2d 95 (1980). In *Ollerman*, the buyer of a lot alleged that if he had known of the existence of an underground well he would not have purchased the lot, or would have purchased it at a lower price. He claimed that the seller, to induce him to buy the lot, "falsely and with intent to defraud" failed to disclose the existence of the well, for which he sought damages. The circuit court denied the seller's motion to dismiss the buyer's complaint for failure to state a claim and the supreme court affirmed its decision.

The court stated that the general rule is that silence—a failure to disclose a fact—is not an intentional misrepresentation unless the seller has a duty to disclose. *Ollerman*, 94 Wis. 2d at 26, 288 N.W.2d at 99-100. The court also stated:

> We recognize that the traditional rule in Wisconsin is that in an action for intentional misrepresentation the seller of real estate, dealing at arm's length with the buyer, has no duty to disclose information to the buyer and therefore has no liability in an action for intentional misrepresentation for failure to disclose.

*Id.* at 29, 288 N.W.2d at 101 (footnote omitted). GSF argues that the "traditional rule" governs this case. We disagree. We conclude that *Ollerman* requires that we apply in this case a more enlightened rule which rejects strict application of the doctrine of *caveat emptor*.

The *Ollerman* court pointed out that over the years society's attitudes toward good faith and fair dealing in business transactions have undergone significant change, and this change has been reflected in the law. *Id.* at 30, 288 N.W.2d at 102. The court noted that the cases were abandoning the *caveat emptor* rule "whenever justice, equity and fair dealing demand it." *Id.* at 34, 288 N.W.2d at 103 (citing Note, *Silence as Fraudulent Concealment — Vendor & Purchaser — Duty to Disclose*, 36 WASH. L. REV. 202, 204 (1961)). The court quoted from LARGE, MACDONALD, AND RAUSHENBUSH, WISCONSIN REAL ESTATE LAW 4-6 (1976): "Where the material facts unknown to the buyer have to do with a physical condition known to the agent but difficult for the buyer to find, certainly then there is a duty to speak and tell the buyer about it." We believe that this rule is consistent with the movement of the courts away from the rule of *caveat emptor* in real estate transactions. *Ollerman*, 94 Wis. 2d at 38, 288 N.W.2d at 105.

The movement expanding the legal duty of a seller in a real estate transaction involves a policy determination. *Id.* at 27, 288 N.W.2d at 100. The doctrine of *caveat emptor* reflected the attitude of rugged individualism in the business economy and the law of the 19th century. *Id.* at 29, 288 N.W.2d at 101. However, business ethics have changed and moved toward more stringent requirements of fair dealing. *Id.* at 34-35 n.16, 288 N.W.2d at 103-04 n.16. The doctrine of *caveat emptor* no longer excuses real estate sellers from fully disclosing to potential purchasers the existence of conditions which may be material to the decision to purchase and which the purchaser is in a poor position to discover.

Therefore, we conclude that Lehman's first and second counterclaims based on GSF's intentional failure to disclose the salmonella contamination state claims upon which relief may be granted.[4] In view of our conclusion, we need not consider whether Lehman's third and fourth counterclaims based on negligent misrepresentation state proper claims. *Id.* at 51, 288 N.W.2d at 112; 94 Wis. 2d at 54-55, 288 N.W.2d at 113 (Hansen, J., concurring).

We next consider GSF's argument that it established a *prima facie* case for summary judgment which Lehman failed to rebut. GSF argues that its proof establishes that it had no knowledge of the alleged salmonella contamination. In the stipulation for trial, however, GSF stipulated that the knowledge of any general partner of GSF "is chargeable as a matter of law to . . . GSF." General partner Robert J. Hartung, who resided on the farm from approximately January 1980 until August 1983, and acted as farm manager on GSF's behalf, said that during the summer of 1982 there was an outbreak of disease among calves at the farm. He was advised by GSF's veterinarians that some calves had contracted salmonellosis and that three or four calves may have died as a result of that disease.

Hartung "believed" that the problem had been dealt with. He averred that "[t]o the best of my knowledge" there was no salmonella problem at the farm between the

---

[4] We emphasize that under summary judgment methodology we have assumed that the facts alleged in Lehman's first and second counterclaims are true. The facts presented at trial may persuade the trial court to tailor any instruction as to GSF's duty to disclose according to those facts. *See Ollerman,* 94 Wis. 2d at 43, 288 N.W.2d at 108 (buyer must prove at trial that existence of undisclosed defect was a material fact and that his or her reliance was justified).

time he left the farm and when it was sold to SGFA. However, it is undisputed that Hartung, and thus GSF by imputation, knew of the 1982 salmonella outbreak. Lehman claims that this fact is material. "A fact is material if a reasonable purchaser would attach importance to its existence or nonexistence in determining the choice of action in the transaction in question . . .." *Id.* at 42, 288 N.W.2d at 107 (citing 3 RESTATEMENT (SECOND) OF TORTS 538 (1977)). A jury could conclude that a reasonable purchaser would have attached importance to the 1982 outbreak of salmonella.

Of course, to establish intentional deceit Lehman must show at trial that GSF intentionally failed to disclose the 1982 outbreak of salmonella with intent to deceive and to induce SGFA to enter into the land contract to its pecuniary damage. *See Whipp v. Iverson*, 43 Wis. 2d 166, 169, 168 N.W.2d 201, 203 (1969) ("In intentional deceit the defendant must either know the representation is untrue or the representation was made recklessly without caring whether it was true or false and with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage."). However, the issue of GSF's intent cannot be properly decided on a motion for summary judgment. *See Doern v. Crawford*, 30 Wis. 2d 206, 214, 140 N.W.2d 193, 196 (1966) (usually, issue of intent may not be resolved on summary judgment).

We therefore conclude that the circuit court properly denied GSF's motion for summary judgment. We remand the case to the circuit court to implement that part of its judgment which provides that if the court of appeals remands the matter for trial, all counterclaim issues shall be tried to a jury.

*By the Court.*—Judgment reversed and cause remanded with directions.