NORWEST BANK WISCONSIN EAU CLAIRE, N.A., Plaintiff-Respondent,†

v.

Michael G. PLOURDE, and Janet L. Plourde, Defendants-Appellants,††

EAU CLAIRE COOP OIL COMPANY, Stromwall Joseph and Gustaveson, Inc., Peter J. Speros and Helen Speros, Defendants.

Court of Appeals

*No. 93–2650. Submitted on briefs April 4, 1994.—Decided May 3, 1994.*

(Also reported in 518 N.W.2d 265.)

†Petition to review denied.
††Petition to cross review denied.

379

380

For the defendants-appellants the cause was submitted on the briefs of *Robert R. Gavic* and *Jorv R. Gavic* of *Gavic Law Office* of Spring Valley.

For the plaintiff-respondent the cause was submitted on the brief of *Dennis M. Sullivan* and *Jeffrey W. Guettinger* of *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Michael and Janet Plourde appeal a foreclosure judgment granted to Norwest Bank Wisconsin Eau Claire. Plourde contends that he was entitled to a jury trial as a matter of right because he was compelled to assert his counterclaims against Norwest in the foreclosure action or be subject to collateral estoppel. We conclude that Plourde was entitled to a jury trial as a matter of right because he would have been collaterally estopped from asserting certain of his claims of bad faith breach of the loan agreements against Norwest in a separate action. While an advisory jury was empaneled, counsel for both sides presented their evidence and motions based on the court's ruling that a binding jury verdict was unavailable. Because this error permeated and tainted the entire proceedings, we reverse the judgment and

remand the cause for a new trial in the interest of justice.[1]

The relevant facts essentially are undisputed. Michael Plourde is a real estate developer and building contractor who desired to purchase and develop several properties in northwest Wisconsin, some of which were improved and some of which were not. The prospective purchases would have generated a negative cash flow because the income the properties produced was insufficient to pay the mortgages. Thus, Plourde proposed, as part of the project, the construction of a twenty-four-unit apartment complex on property located in Hudson. This project would produce sufficient income to generate a positive cash flow so that Plourde could pay the mortgages on all of the properties included in the package. In April 1988, Plourde approached Norwest with this proposal. Plourde already had an extensive and complex series of loan transactions with Norwest. Norwest agreed to finance the package, including the Hudson project, through a series of loan commitment agreements, each covering a separate piece of property in the package.

For disputed reasons, Plourde gave Norwest additional security prior to closing on the Chippewa property part of the loan. Plourde claims that Norwest told him if he did not provide additional security, Norwest would not close on the Chippewa loan or the Hudson loan. Also for reasons that the parties dispute, the loan for the Hudson project was not closed until December 1989, and the apartment building was not constructed. Additionally, the City of Hudson never

---

[1] Because our resolution of this issue is dispositive of the appeal, we need not address the other issues Plourde raises. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

received from Norwest $27,000 that it was supposed to pay the City for a building permit for the twenty-four-unit apartments.

By summer 1990, Plourde was in default on some of his mortgages, and Norwest commenced foreclosure actions. Plourde's answer to Norwest's complaint included a counterclaim alleging that Norwest: (1) Intentionally breached the loan agreement by refusing to make available proceeds necessary to complete the Hudson project; (2) intentionally or negligently deceived Plourde into believing that it would honor the loan agreements when it never intended to do so; and (3) breached the loan agreement and its "fiduciary duty to carry out all the terms and commitments which it had entered into" in bad faith. Plourde demanded a jury trial on his counterclaim. The trial court denied Plourde's demand for a jury trial, ruling that he had waived his right to a jury trial by asserting his legal counterclaim in Norwest's equitable foreclosure action when he was not compelled to do so. The trial court agreed to empanel an advisory jury.

During the trial and after Norwest had presented its case, Plourde introduced evidence that he had never received $27,000 that Norwest claimed as a portion of the amount Plourde owed Norwest. During a discussion outside the jury's presence, Norwest admitted that it knew that Plourde had not received the $27,000. Plourde subsequently presented the trial court with a pretrial deposition during which one of Norwest's attorneys indicated his knowledge that Plourde did not receive the $27,000. Norwest then waived its claim to the $27,000.

The advisory jury rendered a $1.7 million verdict against Norwest, based upon its findings that Norwest breached its promise to timely lend Plourde money to

construct the Hudson project and that Norwest failed to deal fairly and honestly with Plourde. After a hearing, the trial court issued its memorandum decision in which it found Plourde to be primarily responsible for the failure to close the loan, the construction delays and his subsequent defaults. The court entered a foreclosure judgment in favor of Norwest and refused to grant Plourde a judgment on the verdict.

Plourde contends that the trial court erred by concluding that he was not entitled to a jury trial as a matter of right. Plourde argues that his allegations of bad faith breach of the loan commitment agreements, consisting of Norwest's delays in processing the loans, requiring additional collateral and failing to pay the City of Hudson $27,000 for the building permit, arise out of the same transaction as Norwest's foreclosure action. Plourde also asserts that he was required to challenge at the foreclosure trial Norwest's attempt to collect the $27,000 despite its knowledge that Plourde never received it because he would be collaterally estopped from claiming that Norwest failed to pay that amount to the City of Hudson in a later action. Plourde further argues that a successful prosecution of those actions would impair Norwest's rights to foreclose and collect the amount of money it sought to collect in its foreclosure action. Thus, Plourde argues, under *Green Spring Farms v. Spring Green Farm Assocs.*, 172 Wis. 2d 28, 492 N.W.2d 392 (Ct. App. 1992), and *A.B.C.G. Enters. v. First Bank Southeast*, 178 Wis. 2d 370, 504 N.W.2d 382 (Ct. App. 1993), he was compelled to assert his counterclaim in Norwest's foreclosure action.

During the hearing on Norwest's motion to strike Plourde's jury demand, Plourde's counsel stated several times his belief that Plourde was not legally

385

entitled to a jury trial. Ordinarily, such statements would amount to a waiver of the issue because the issue was not properly preserved for appeal. *See Post v. Schwall*, 157 Wis. 2d 652, 657-58, 460 N.W.2d 794, 796 (Ct. App. 1990). In this case, however, the trial court subsequently reopened the issue of whether Plourde was entitled to a jury trial on his counterclaim. Plourde then asserted he was entitled to a jury trial as a matter of right. The trial court rejected Plourde's arguments and reaffirmed its prior ruling that Plourde waived his right to a jury by asserting his legal counterclaim in Norwest's equitable foreclosure action, even though he was not compelled to do so by collateral estoppel. We therefore conclude that Plourde is not precluded from raising this issue on appeal despite his counsel's previous concessions.

It is well settled that the right to a jury trial does not extend to equitable actions, and that "a legal counterclaim in an equitable action does not necessarily entitle the counterclaimant to a jury trial." *Green Spring Farms*, 172 Wis. 2d at 34, 492 N.W.2d at 394 (citations omitted). In *Green Spring Farms*, we held that "where a counterclaimant is compelled to raise his or her claims by the doctrine of collateral estoppel, that compulsion does not result in the waiver of the counterclaimant's right to a jury trial." *Id.* at 35-36, 492 N.W.2d at 395 (footnote omitted). Whether the application of collateral estoppel would compel Plourde to assert his counterclaim in Norwest's equitable foreclosure action is a question of law that we review independently of the trial court's determination. *See In re T.M.S.*, 152 Wis. 2d 345, 354, 448 N.W.2d 282, 286 (Ct. App. 1989).

We adopted RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b) (1982), in *Green Spring Farms*, 172 Wis. 2d at 35, 492 N.W.2d at 395. Section 22(2)(b) provides:

> A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if: . . . [t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment and would impair rights established in the initial action.

*A.B.C.G.*, 178 Wis. 2d at 377-78, 504 N.W.2d at 385, used a res judicata transactional analysis to determine whether a counterclaimant is compelled to assert his or her legal counterclaim in an equitable action. Under *A.B.C.G.*, if the facts giving rise to the counterclaim arise from the same facts, events or transactions as the equitable complaint, res judicata bars the assertion of the legal counterclaim in a subsequent action. *Id.* Thus *A.B.C.G.* suggests that a claimant may litigate all claims arising from the same transaction in an equitable action without waiving the claimant's right to a jury trial. *A.B.C.G.* enunciates a broader standard for determining whether a claimant who asserts a legal counterclaim in an equitable action waives the right to a jury trial than that announced in *Green Spring Farms*. We need not resolve this apparent discrepancy because we conclude that under either standard we would conclude that Plourde did not waive his right to a jury trial.

Plourde asserts on appeal that the essence of his counterclaim is that Norwest's bad faith breach of the

loan commitment agreements forced him to default, triggering the foreclosure action. Moreover, Plourde contends, Norwest would not be entitled to a foreclosure judgment if its bad faith breach of the loan commitment agreements forced the default. These are exactly the type of situations contemplated by comment f to RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b) (1982), which we also adopted in *Green Spring Farms*:

> The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment . . . or by depriving the plaintiff in the first action of property rights vested in him under the first judgment.

Norwest asserts that nowhere in his pleadings does Plourde assert that Norwest's alleged bad faith acts forced or caused the defaults. Plourde's counterclaim, however, asserts that Norwest understood the financial structure that would be necessary to allow Plourde to meet all loan obligations, misrepresented its intent to meet the total package commitment including the Hudson project and that this representation harmed Plourde. Wisconsin has a notice pleading statute that does not require "magic words" except in limited circumstances. *See* § 802.02, STATS. "The purpose of pleadings is to notify the opposing party of the pleader's position in the case and to frame the issues to be resolved in the action for the benefit of the litigants and the court." *Hansher v. Kaishian*, 79 Wis. 2d 374, 385, 255 N.W.2d 564, 570 (1977). We conclude that

Plourde's counterclaim sufficiently apprised Norwest of his claim that its bad faith breach forced the defaults and triggered the foreclosure actions.

We now analyze Plourde's counterclaim to determine whether collateral estoppel would bar a subsequent action based on the assertions in the counterclaim. Integral to Plourde's bad faith claim was the assertion that Norwest required additional security before it would close on the Chippewa and Hudson properties, notwithstanding its previous agreement to complete the loans without this security. Plourde claims that Norwest told him if he did not provide additional security, Norwest would not close on the Chippewa loan, and if Norwest did not close on the Chippewa loan, it would not close on the Hudson loan. Norwest's foreclosure action was against all security held by Norwest for these loans, including this additional security. If Plourde failed to contest the foreclosure against this additional security during Norwest's foreclosure action, he would be collaterally estopped from asserting that Norwest improperly demanded this additional security, thereby breaching the loan agreement.

Also integral to Plourde's bad faith claim was the assertion that Norwest failed to pay to the City of Hudson the $27,000 fee required to obtain a building permit for the Hudson project. Without the building permit, the City precluded construction work on the project. According to Plourde, Norwest knew that if the Hudson project were not constructed, the entire project would generate a negative cash flow that would eventually cause a default. Because Norwest's foreclosure action and Plourde's claim of bad faith breach of the loan commitment agreements claim were both based on the transactions surrounding the loan agreements,

Plourde was compelled to assert this claim of bad faith breach of the loan commitment agreements in Norwest's foreclosure action or be collaterally estopped from asserting this alleged breach in a subsequent action challenging the amount of the foreclosure judgment.

Norwest included in the amount it claimed that Plourde was indebted the $27,000 that was to be paid to the City of Hudson for the building permit. If Plourde failed to contest this amount, and the foreclosure action resulted in a judgment including this amount, he would be collaterally estopped from asserting in a subsequent action that Norwest failed to pay the $27,000 to the City as required by the loan agreement.

Each of these assertions were integral to Plourde's bad faith claim against Norwest and collateral estoppel would have seriously limited Plourde's ability to assert his bad faith claim in a subsequent action. We therefore conclude that, under the analysis in *Green Spring Farms*, Plourde was compelled to assert his counterclaim in Norwest's foreclosure action.

■

Moreover, under *A.B.C.G.*, Plourde would be barred from asserting his bad faith claims in a subsequent action because the mortgages being foreclosed arose from the loan agreements which involve "the same contractual negotiations, obligations and surrounding events[ ]" as the loan commitment which Plourde alleges Norwest breached. *See id.* at 377, 504 N.W.2d at 385. We therefore conclude that Plourde asserting his legal counterclaim in Norwest's equitable foreclosure action did not waive Plourde's right to a jury trial.

We have discretionary power under § 752.35, STATS., to reverse if we conclude that the case was not fully and fairly tried. Here, the parties did not know that the jury's verdict would be binding. The parties are entitled to a trial with advance knowledge of the nature of the trial and the effect of the jury verdict. Whether a jury verdict is binding or merely advisory to the trial court affects the parties' presentation of evidence, motions to the trial court and other trial strategy. Additionally, Norwest's motions after verdict may have been untimely because of the posture of this case. We conclude that the parties' lack of knowledge concerning the nature of the case and the effect of the verdict rendered them unable to fully and fairly try the case to the jury. We therefore exercise our discretionary power under § 752.35 and reverse the judgment and remand the cause for a new trial.

We need not address Plourde's contentions that some of Norwest's acts constituted independent torts. We will address these contentions, however, in the interest of judicial economy. Plourde claims that Norwest required collateral additional to that contemplated by the loan agreement, under threat of refusing to close on further loans. Plourde also claims that Norwest included in the amount it claimed Plourde owed the $27,000 that Norwest knew neither Plourde nor the City of Hudson had received. Plourde asserts that these acts constituted independent, intentional torts, entitling him to punitive damages.

Our supreme court discussed the distinction between actions in tort and in contract in *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983): "[T]here must be a duty existing inde-

pendently of the performance of the contract for a cause of action in tort to exist." The court focused on the liability aspect of tort law, ruling that a common-law duty must exist independently of the duty to perform the contract. *Id.* We further explained in *McDonald v. Century 21 Real Estate Corp.*, 132 Wis. 2d 1, 6, 390 N.W.2d 68, 70 (Ct. App. 1986), "In order for [a cause of action for negligent performance of a contractual obligation] to exist, a duty must exist independently of the performance of the contract. According to this test, the existence of a contract is ignored when determining whether [the] alleged misconduct is actionable in tort." (Citation omitted.)

Under this analysis, Plourde's claim that Norwest demanded additional collateral in excess of that required by the loan agreements constitutes a claim for breach of contract, not tort. Norwest had no duty to accept a specified amount or type of collateral independently of the loan agreements. Because the law itself imposed no duty upon Norwest to accept certain collateral, this claim does not amount to an action in tort. *See id.* at 9, 390 N.W.2d at 71. Because punitive damages are not available in breach of contract actions, *Loehrke v. Wanta Builders, Inc.*, 151 Wis. 2d 695, 703, 445 N.W.2d 717, 721 (Ct. App. 1989), Plourde is not entitled to seek punitive damages based on this claim.

Plourde also contends that Norwest committed actionable fraud by seeking recovery of the $27,000 from Plourde at trial, despite its knowledge that Plourde never received or benefitted from the $27,000. To the extent that Plourde alleges and proves that Norwest intentionally attempted to collect this amount from Plourde with knowledge that it was not entitled to

392

recover this amount from Plourde and that Plourde was damaged by Norwest's alleged fraud, Plourde has established a cause of action in tort. *See Chitwood v. A.O. Smith Harvestore Prods., Inc.* 170 Wis. 2d 622, 631, 489 N.W.2d 697, 702 (Ct. App. 1992). Depending upon the evidence, he may then be entitled to a punitive damages instruction. *See Loehrke*, 151 Wis. 2d at 703-04, 445 N.W.2d at 721.

*By the Court.*—Judgment reversed and cause remanded.