A.B.C.G. ENTERPRISES, INC., Charles Injasoulian and Mary Ann Injasoulian, Plaintiffs-Appellants-Petitioners,

v.

FIRST BANK SOUTHEAST, N.A., Defendant-Respondent.

Supreme Court

*No. 92–2428. Oral argument March 30, 1994.—Decided June 7, 1994.*

(Also reported in 515 N.W.2d 904.)

468

For the plaintiffs-appellants-petitioners there were briefs by *Terrance L. Kallenbach* and *Capwell and Berthelsen,* Racine and oral argument by *Terrance L. Kallenbach.*

For the defendant-respondent there was a brief by *Robert E. Hankel* and *Paulson, Hankel, Bruner & Nichols, S.C.,* Racine and oral argument by *John V. O'Connor,* of counsel.

Amicus curiae brief was filed by *John E. Knight* and *James E. Bartzen* and *Boardman, Suhr, Curry &*

*Field,* Madison for Attorneys for Wisconsin Bankers Association.

WILLIAM A. BABLITCH, J. A.B.C.G. Enterprises, Inc., Charles Injasoulian and Mary Ann Injasoulian (collectively ABCG) seek review of a court of appeals' decision holding that ABCG is barred under the doctrine of res judicata from bringing this action against First Bank Southeast, N.A. (First Bank). The court of appeals concluded that ABCG was required to counterclaim in a prior foreclosure action instituted by First Bank in order to preserve its claims. ABCG argues that res judicata does not apply in this case because Wisconsin has a permissive counterclaim statute which allows a party to counterclaim but never requires a party to do so. We conclude that ABCG was required to counterclaim in the prior action because the claims, if successfully litigated, would nullify the prior default judgments entered in favor of First Bank or impair rights established in the initial action. Since it did not counterclaim, its present claims are barred by res judicata. Accordingly, we affirm the decision of the court of appeals.

The facts relevant to this appeal are as follows: In 1990, First Bank, as mortgagee, sued ABCG in six separate actions seeking foreclosure of ABCG's interests in various properties pursuant to certain mortgage assumption agreements. Because ABCG did not defend those actions, the circuit court entered default judgments of foreclosure in favor of First Bank.

Subsequently, ABCG brought this action against First Bank. At issue in this action are the properties which were the subject of First Bank's prior foreclosure action. In its complaint ABCG alleges: (1) misrepresen-

tation by First Bank as to the investment quality of the properties at the time of purchase; (2) breach of contract regarding schedules for payments made on the properties, and extension of additional credit to repair the properties; and (3) failure to properly manage the properties and to collect, apply, and conserve the rental payments collected from the properties. ABCG alleges that these actions by First Bank caused ABCG to default on its mortgage agreements and, by way of foreclosure, lose its interest in the properties. ABCG seeks compensatory damages and other relief deemed just and equitable by the court.

In the circuit court, First Bank moved for summary judgment on the ground that ABCG's claims were barred under the doctrine of res judicata by the prior default judgments in the foreclosure actions. The circuit court agreed and granted summary judgment in favor of First Bank.

The court of appeals affirmed, holding that ABCG was required to counterclaim in the prior foreclosure action to preserve its claims. *A.B.C.G. Enterprises v. First Bank Southeast,* 178 Wis. 2d 370, 504 N.W.2d 382 (Ct. App. 1993). ABCG petitioned and we granted review.

The issue is whether ABCG's claims against First Bank are precluded under the doctrine of res judicata by the prior default judgments entered in favor of First Bank. Whether the doctrine of res judicata applies under a given set of facts is a question of law which we review de novo. *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983).

The doctrine of res judicata provides that a final judgment " 'is conclusive in all subsequent actions

between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings.' " *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983). It is premised upon the maxim that litigation must come to an end so as to ensure fairness to the parties and sound judicial administration. *Id.* at 311. The doctrine is applied with a broad brush so as to achieve these goals. It embraces not only what has been litigated in previous proceedings, but also extends to issues that could have been litigated. The terms "res judicata," "issue preclusion," and "collateral estoppel" are sometimes used as if synonymous. Although the terms may be used interchangeably in some limited circumstances, the terms are generally different. Issue preclusion or collateral estoppel limits relitigation of issues that have actually been litigated in former proceedings. *Michelle T. v. Crozier,* 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). Claim preclusion or res judicata limits relitigation of issues that were or might have been litigated in former proceedings. *DePratt,* 113 Wis. 2d at 310. Res judicata is the doctrine at issue in this case.

ABCG concedes that the doctrine of res judicata exists in Wisconsin. ABCG argues, however, that even if it were to concede that its present claims would traditionally be barred by the prior foreclosure actions under a res judicata analysis, the doctrine still would be inapplicable to this case. ABCG argues that sec. 802.07(1), Stats., is a permissive counterclaim statute which allows a defendant to bring a counterclaim but does not require a defendant to do so. Precluding ABCG's claims under res judicata on the basis that they should have been raised as counterclaims in the prior action would, according to ABCG, create a com-

pulsory counterclaim rule in Wisconsin contrary to sec. 802.07(1). We disagree with ABCG's argument.

We hold that ABCG was required to raise its present claims as counterclaims in the prior foreclosure proceedings. We base our holding on a "common-law compulsory counterclaim" rule which requires a defendant to counterclaim if its claim, when brought in a subsequent, separate action, would nullify the initial judgment or impair rights established in the initial action.

We begin with the statute ABCG relies on, sec. 802.07(1), Stats. That statute provides:

> **(1)** COUNTERCLAIM. A defendant may counterclaim any claim which the defendant has against a plaintiff, upon which a judgment may be had in the action. A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. Except as prohibited by s. 802.02(1m), the counterclaim may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party.

ABCG contends that because the first sentence states that a defendant *may* counterclaim it necessarily precludes any compulsory counterclaims. For support of its interpretation, ABCG cites to *Wm. H. Heinemann Creameries v. Milw. Auto. Ins. Co.,* 270 Wis. 443, 71 N.W.2d 395 (1955), in which the court interpreted the predecessor statute, sec. 263.14(1). Section 263.14(1) read, "[a] defendant may counterclaim any claim which he has against a plaintiff, upon which a judgment may be had in the action."

In *Heinemann,* Tronca sued Heinemann Creameries for injuries resulting from a motor vehicle accident between a Heinemann truck and Tronca's vehicle. *Id.* at 445. Heinemann's insurer settled the personal

474

injury suit. *Id.* Heinemann and its insurer then brought a subsequent suit against Tronca seeking to recover for damage to the Heinemann truck. *Id.* at 446. A question on appeal was whether the order of dismissal in the personal injury action was res judicata as to the rights of Heinemann to recover for damage to its truck. *Id.* at 447. The court concluded that the action was not barred by the earlier action because Heinemann had the option of either counterclaiming in the original action by Tronca, or asserting its claim in a later action. *Id.* at 448.

In reaching this conclusion, the court focused on RESTATEMENT OF JUDGMENTS § 58 (1942), which read:

> Where the defendant does not interpose a counterclaim although he is entitled to do so, he is not precluded thereby from subsequently maintaining an action against the plaintiff on the cause of action which could have been set up as a counterclaim.

The court acknowledged that in some jurisdictions a counterclaim is compulsory on the part of the defendant. It then distinguished sec. 263.14(1), Stats., stating that it was "not of such compulsory type," as evident from the comment of the advisory committee on pleading and practice which read:

> 'The new rule 263.14, governing counterclaims, is much like federal rule 13. There is some difference between these two rules: Under 263.14 counterclaims are purely permissive. The defendant has the choice of counterclaiming or not, as to him seems best. Under the federal rule counterclaims are divided into two classes, viz., compulsory and permissive.' (Emphasis omitted.) *Heinemann,* 270 Wis. at 450.

The reasoning in *Heinemann* is also reflected in earlier Wisconsin cases. *See, e.g., Kassien v. Menako,* 270 Wis. 309, 70 N.W.2d 670 (1955); *Linker v. Batavian Nat. Bank of La Crosse,* 244 Wis. 459, 12 N.W.2d 721 (1944). In addition, a more recent supreme court decision relied on *Heinemann's* reasoning in its discussion of the permissive counterclaim statute. *See Schwabe v. Chantilly Inc.,* 67 Wis. 2d 267, 271–76, 226 N.W.2d 452 (1975).

ABCG contends that because the relevant language of sec. 802.07(1), Stats., mirrors that of its predecessor, sec. 263.14, and because the *Heinemann* court made clear that the earlier statute was not a compulsory counterclaim statute, we are bound to apply *Heinemann's* holding to this case. ABCG's argument is correct in so far as the general rule in Wisconsin is that where a defendant may interpose a counterclaim but fails to do so, he is not precluded from maintaining a subsequent action on that claim. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 22(1) (1982). The general rule is premised on the belief that notions of fairness require that a defendant be given his day in court when and where he sees fit. *Id.* at § 22 cmt. a.

That rule, however, is not absolute. Since *Heinemann,* a narrowly defined class of "common-law compulsory counterclaims" has been recognized in the revised RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b) (1982), and in limited circumstances, failure to raise such counterclaims in a prior action bars related claims from being raised in a subsequent action. The application of this common law rule is narrow: the rule applies only if a favorable judgment in the second action would nullify the judgment in the original action or impair

476

rights established in the initial action. The RESTATE-
MENT (SECOND) OF JUDGMENTS § 22(2)(b) states:

> (2) A defendant who may interpose a claim as a
> counterclaim in an action but fails to do so is pre-
> cluded, after the rendition of judgment in that
> action, from maintaining an action on the claim if:
>
> . . .
>
> (b) The relationship between the counterclaim
> and the plaintiff's claim is such that successful pros-
> ecution of the second action would nullify the initial
> judgment or would impair rights established in the
> initial action.

We conclude that this is the better rule of law to apply.
This rule preserves the integrity and finality of judg-
ments and the litigants' reliance on them, by
precluding a collateral attack upon a judgment in a
subsequent proceeding when the attack would com-
pletely undermine the rights established in the initial
judgment.

Comment f of § 22 illustrates the application of
this concept:

> f. *Special circumstances under which failure
> to interpose a counterclaim will operate as a bar.*
> Normally, in the absence of a compulsory counter-
> claim statute or rule of court, the defendant has a
> choice as to whether or not he will pursue his coun-
> terclaim in the action brought against him by the
> plaintiff. There are occasions, however, when allow-
> ance of a subsequent action would so plainly
> operate to undermine the initial judgment that the
> principle of finality requires preclusion of such an
> action. This need is recognized in Subsection (2)(b).
>
> For such an occasion to arise, it is not sufficient
> that the counterclaim grow out of the same transac-

tion or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim. The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment . . . or by depriving the plaintiff in the first action of property rights vested in him under the first judgment . . ..

Several seventh circuit cases cited in the Restatement more fully illustrate the application of the exception. In *Martino v. McDonald's System, Inc.,* 598 F.2d 1079 (7th Cir. 1979), *cert. denied,* 444 U.S. 966 (1979), the court applied the exception to bar an antitrust action in which the plaintiff contended that a prior termination of a franchise was not justified because the antitrust laws forbade it. The court stated:

McDonald's System and FRIC have terminated and repurchased Martino's franchise in reliance on the trial court's 1973 judgment telling them they were justified in doing so. Now Martino seeks to impose significant financial liability on the defendants for these actions. We cannot hold that the counterclaim exception to the res judicata rule, based merely on notions of convenience, permits the plaintiff here to wage this direct attack on the rights established by the prior judgment. *Id.* at 1085.

Again, in *Lee v. City of Peoria,* 685 F.2d 196 (7th Cir. 1982), despite the absence of a compulsory counterclaim rule, the court held that an employee previously discharged for cause (the discharge was upheld on appeal) could not bring a separate civil rights action alleging racial discrimination and seeking

lost wages and reinstatement. The court stated, "[a]ffording Lee yet another opportunity to attack the validity of his discharge would do nothing to serve the policies behind either res judicata or the civil rights statutes." *Id.* at 201.

Also, in *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir. 1986), the court held that an original foreclosure proceeding against the plaintiffs was res judicata as to the rights of the plaintiffs to raise a RICO action based on fraud and forgery against the parties involved in the prior foreclosure action. It opined that the plaintiffs should have brought the RICO claims in the original foreclosure action instituted by the mortgagee bank. *Id.* at 1236–37. The court stated that to "allow the Henrys to bring their RICO claim now would completely undermine the Bank's judgments of foreclosure, which necessarily determined the validity of the underlying mortgage." *Id.* at 1236. For additional discussion of the rule, see *Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926 (7th Cir. 1986), *cert. denied,* 480 U.S. 907 (1987); *Lehman v. Continental Health Care, Ltd.,* 608 N.E.2d 303 (Ill. App. Ct. 1992); *Carey v. Neal, Cortina and Associates,* 576 N.E.2d 220 (Ill. App. Ct. 1991) (recognizing the rule but finding that it did not apply to the facts of the case); *Rowland v. Harrison,* 577 A.2d 51 (Md. 1990) (same). For a case recognizing but refusing to adopt the exception, see *Henderson v. Snider Bros., Inc.,* 409 A.2d 1083 (D.C. 1979).

Our own court of appeals also applied the rule in § 22(2)(b) of the Restatement. *See Green Spring Farms v. Spring Green Farms,* 172 Wis. 2d 28, 492 N.W.2d 392 (Ct. App. 1992). The question in *Green Spring* was whether the defendant waived his right to a jury trial when he filed a counterclaim. The court concluded that

he did not lose his right to a jury trial because he was compelled by collateral estoppel to assert his counterclaims in order to preserve them. *Id.* at 31. To support its conclusion that the defendant was compelled to bring his claims, the court relied on RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b) and stated:

> If [the defendant] is allowed in a later action to attack [the plaintiff's] foreclosure judgment on grounds of fraud in inducement of the land contract, his successful prosecution of that action would nullify the judgment and deprive [the plaintiff] of property rights vested in it under the judgment. He must, therefore, assert his claim in this action or lose it. *Id.* at 36.

We hold that the principles of res judicata preclude a defendant who may counterclaim in a prior action from bringing a subsequent action on the claim if the action would nullify the initial judgment or impair rights established in the initial action. Because a favorable judgment for ABCG in this action would nullify the prior foreclosure in favor of First Bank or impair rights established in the initial action, we hold that ABCG is precluded from maintaining this action.

In determining whether a favorable judgment for ABCG in this action would nullify First Bank's prior judgment or impair rights established in the initial action, we must first determine whether there is an identity of parties and an identity of causes of action. *DePratt,* 113 Wis. 2d at 311. ABCG concedes that there is an identity of parties in this case and First Bank's prior foreclosure actions. In determining whether there is an identity of causes of action we must examine the

causes of action in both suits within the framework of the transactional analysis adopted from the RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982). *DePratt,* 113 Wis. 2d at 311. "Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together." *Parks v. City of Madison,* 171 Wis. 2d 730, 735, 492 N.W.2d 365 (Ct. App. 1992). The concept of a transaction, "connotes a natural grouping or common nucleus of operative facts." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1982). In determining if the claims of an action arise from a single transaction, we may consider whether the facts are related in time, space, origin, or motivation. *Id.*

In addition, since the prior action was a default judgment, our analysis is restricted to the pleadings in the prior default. The conclusiveness of a default judgment under a res judicata analysis, "is limited to the material issuable facts which are well pleaded in the declaration or complaint. The judgment does not extend to issues which were not raised in the pleadings." *Klaus v. Vander Heyden,* 106 Wis. 2d 353, 359–60, 316 N.W.2d 664 (1982) (citing 50 C.J.S. *Judgments* § 706 (1947); *Mitchell v. Jones,* 342 P.2d 503, 506–07 (1959) (holding that default judgment is res judicata as to all issues aptly pleaded in the complaint, and defendant is estopped to deny in a future action any allegation contained in the former complaint).

Keeping within the transactional analysis framework, and the restrictions upon default judgments, we conclude that there is an identity of causes of action between ABCG's claims and the prior foreclosure

actions. Both actions arise from the same mortgage transactions. First Bank originally brought its action seeking foreclosure of certain mortgages because of ABCG's default in payment. In its complaint, First Bank alleged that ABCG had executed several mortgages and personal guarantees to First Bank to secure interest in certain properties, and had assigned rents, profits, and income from the properties to First Bank. First Bank also alleged that ABCG failed to comply with the terms and conditions of the mortgages and defaulted on the principle balance of the mortgage note.

In its present action, ABCG attacks the validity of the original mortgage transactions. ABCG alleges that First Bank misrepresented the quality of the properties mortgaged. ABCG also claims First Bank did not comply with the terms of the mortgage agreements in that First Bank failed to adequately manage the properties and breached the contract regarding payment on the properties and additional credit for property repair. The same mortgage transactions that were at issue in the prior action are at issue in the present case.

Having concluded that there is an identity of parties and causes of action, we must now determine whether ABCG's claims, if successfully litigated, would nullify the prior foreclosure action or impair rights established in the initial action so as to trigger the application of res judicata. Essentially, ABCG alleges that the original foreclosure was improper. First Bank established the validity of ABCG's mortgage obligation; ABCG claims that its obligation was not valid because of misrepresentations by First Bank. First Bank established that ABCG was in default; ABCG alleges that absent the Bank's action, it would not be in

default. Finally, First Bank established the amount at issue in the mortgages; ABCG attempts to put the amount at issue again by alleging that payments were not properly received and applied to the mortgage debt. A judgment in favor of ABCG would thus directly undermine the original default judgment in which the court held that under the circumstances, foreclosure was proper.

If we were to allow ABCG to recover damages from First Bank, or if we were to grant other "equitable" remedies (as ABCG requests), the judgment awarding First Bank the amounts due on the properties and additional costs would be rendered meaningless. If a court found the mortgages invalid or First Bank to have caused the default, First Bank could be essentially forced to return its previous recovery. In the interest of equity and finality, we hold that ABCG is barred from raising its present claims against First Bank.

Finally, ABCG argues alternatively that even if we determine that its claims are barred under principles of res judicata, our decision should apply prospectively only. *Chevron Oil v. Huson,* 404 U.S. 97, 106–08 (1971), sets out a three-part test for retroactive application of a law. *Chevron* directs that a rule of law should not be applied retroactively when it is new, when its retroactive operation would retard its purpose, and when retroactive application would create inequitable results. *Id.* We are not creating a new rule of law in this case. In *Heinemann* we did not consider the situation with which we are presented today, i.e., a subsequent action which would nullify the initial judgment or impair rights established in the initial action. Upon

considering it, we, like other courts, have simply applied the doctrine of res judicata to bar an action that would nullify the initial judgment or impair rights established in the initial action. Additionally, retroactive application of this rule does not retard the purpose of res judicata; the rule is meant to ensure finality of judgments. Finally, retroactive application is not inequitable. It is not difficult to foresee from the decision of the court of appeals in *Green Spring,* 172 Wis. 2d 28, and our previous reliance on the Restatement in *Heinemann* that we would apply such a rule.

*By the Court.*—The decision of the court of appeals is affirmed.