MENARD, INC., Plaintiff-Respondent,†

v.

LITEWAY LIGHTING PRODUCTS, Defendant-Appellant.

Court of Appeals

*No. 03–1391. Submitted on briefs December 23, 2003.—Decided*
*April 13, 2004.*

2004 WI App 95

(Also reported in 685 N.W.2d 365.)

† Petition to review granted 9-1-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Carol S. Dittmar* and *Teresa E. O'Halloran* of *Garvey, Anderson, Johnson, Geraci & Mirr, S.C.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephanie L. Finn* and *Jay E. Heit* of *Herrick & Hart, S.C.* of Eau Claire.

Before Cane, C.J., Hoover, P.J, and Peterson, J.

¶ 1. HOOVER, P.J. Liteway Lighting Products appeals a $140,000 judgment for products Menard, Inc., alleges it returned to Liteway for credit. Liteway claims that the trial court applied the wrong burden of proof, requiring Liteway to disprove Menard's allegations. Liteway also appeals an order denying its motion for summary judgment, claiming Menard's suit against it is barred by claim preclusion because of a prior suit Liteway filed against Menard for nonpayment of invoices. The trial court determined that claim preclusion only applied to issues actually litigated in a previous suit and that Menard's suit was not precluded because it had not been required to counterclaim in the earlier suit. We conclude that Menard's present suit is barred by claim preclusion and therefore reverse the judgment and order.

## Background

¶ 2. Liteway filed suit against Menard on October 19, 2000, alleging that Liteway shipped and sold light fixtures to Menard on an open-ended credit account. Liteway alleged that Menard accepted the shipments. After shipping, Liteway sent invoices for payment, which Menard failed or refused to pay, for a total of about $355,000 in outstanding amounts, breaching a contract. The case was assigned to the Honorable Eric Wahl.

¶ 3. Menard's answer was due December 11, 2000. On December 12, Liteway moved for a default judgment, which the trial court granted on December 13 and Liteway docketed on December 14. Sometime in the afternoon of December 12, Menard apparently realized it was in default and filed its answer.

¶ 4. On December 27, the court held a hearing on Menard's motion to extend the time to file the answer and vacate the default judgment. The court concluded there was no excusable neglect. In January 2001, however, it stayed enforcement of the judgment pending additional argument, and to give Menard an opportunity to try to resolve the issue with Liteway. Eventually, on October 9, 2001, the court lifted the stay, noting Menard "is still trying to litigate the dispute . . . ." Menard did not appeal and satisfied the judgment on November 16, 2001.

¶ 5. However, on August 23, 2001, before Judge Wahl lifted the stay on the judgment, Menard filed this case, alleging it had purchased lighting equipment from Liteway. It claimed some items were damaged upon receipt and some were subsequently determined to be defective because Menard's customers returned them to the stores. Menard alleged that it returned the defective merchandise but had not been credited and that it had incurred other costs including shipping. Menard alleged that Liteway had been unjustly enriched because it had been paid and then received items back and that Liteway breached its duties under the Uniform Commercial Code. The case was assigned to the Honorable Lisa Stark.

¶ 6. Liteway moved for summary judgment, which the trial court denied. It noted that Judge Wahl had relied solely on the damages alleged in Liteway's first complaint and that Menard was not given an opportunity to argue the value of damages or a counterclaim or setoff. The court ordered the motion denied unless Liteway could demonstrate it had provided Judge Wahl with attachments "identifying invoices, amounts paid and returns or other documentation."

¶ 7. After the motion for summary judgment was denied, Menard's case was tried to the court, which ultimately concluded Menard was entitled to approximately $140,000. Liteway appeals.

## Discussion

¶ 8. We review the decision to grant summary judgment de novo, using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Whether claim preclusion[1] applies to a given set of facts is also a question of law. *See A.B.C.G. Enters. v. First Bank SE, N.A.*, 184 Wis. 2d 465, 472, 515 N.W.2d 904 (1994).

¶ 9. Claim preclusion provides that a judgment "is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *Id.* at 472–73 (citation omitted). Generally, application of claim preclusion does not depend on actual litigation of an issue. *Parks v. City of Madison*, 171 Wis. 2d 730, 735, 492 N.W.2d 365 (Ct. App. 1992).

¶ 10. For claim preclusion to apply, there must be (1) an identity between the parties; (2) an identity between the claims; and (3) a final judgment on the merits in the first case. *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). Here there is no dispute of identity between the parties.

---

[1] Although the parties speak of "res judicata," that term has been replaced by "claim preclusion." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

Also, while the first case ended with a default judgment, this does not prevent application of claim preclusion, although there is a restriction on default judgments as noted below.

¶ 11. To determine whether there is an identity between claims, Wisconsin has adopted the transactional analysis approach. "Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together." *A.B.C.G.*, 184 Wis. 2d at 481 (citation omitted). When the judgment in the first case is a default judgment, the transactional analysis is limited to the pleadings in the prior default. *Id.* The conclusiveness of a default judgment is limited to "material issuable facts which are well pleaded" in the complaint and does not extend to issues not raised in the pleading. *Id.* (citation omitted).

¶ 12. Thus, to consider whether there is identity among the claims, we first consider whether the claims arise from the same transaction. Because there is a default, we limit this consideration based on facts as pled. Then, we consider whether issues raised in the second suit could have been raised and litigated in the first suit.

**Identity of Causes of Action**

¶ 13. For multiple actions or a series of actions to be a single transaction under this analysis, there must be a natural grouping or common nucleus of operative facts. *Id.* The transactional analysis is to be applied pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or

motivation . . . and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Post v. Schwall*, 157 Wis. 2d 652, 658–59, 460 N.W.2d 794 (Ct. App. 1990) (citation omitted).

¶ 14. Menard argues that its claim for credit or repayment for items it returned results from a separate transaction than that alleged by Liteway in the first complaint. We disagree. A buyer's return of a set of goods for credit or an offset is a component of the transaction that began when the seller shipped those goods.

¶ 15. In *Post*, the Schwalls purchased property under a land contract with the Posts. In addition to the terms of payment, the contract contained a requirement that the Schwalls would insure the property and make any proceeds payable directly to the Posts in the event of a loss. There was a fire, damaging one of the buildings, and the Schwalls applied the $10,000 insurance payment to the land contract rather than giving the payment to the Posts. Then they missed a payment on the contract. *Id.* at 655.

¶ 16. Shortly thereafter, the Schwalls' bank commenced a foreclosure action on the mortgage it held. The Posts cross-claimed for foreclosure of the land contract. The bank dismissed its action and the Posts prevailed. The Posts reclaimed the property at a sheriff's sale by bidding the amount of their foreclosure judgment. Six months later, they brought an action for fraud based on the Schwalls' failure to tender the insurance payment. *Id.* at 655–56.

¶ 17. The trial court concluded that claim preclusion applied, even though the Posts argued that the breach of the payment and insurance portions of the land contract constituted two separate transactions. *Id.*

448

at 656. We agreed with the trial court, stating the Posts confused "breach" with transaction. Although there were two breaches, each arose from the single land contract. *Id.* at 659.

■

¶ 18. Similarly here, Liteway initially sued for nonpayment of certain invoices for goods shipped. Menard now tries to claim that in connection with these invoices, it returned a portion of the items. However, both the shipment and return of goods are part of a single transaction. The common "nucleus of operative facts" is the exchange of goods for payment. The transaction will be complete when Menard no longer has a balance due and owing. This will occur either when Menard pays the bill or when it returns items and receives credit. We decline to break a sales transaction into multiple components and label each a new event.[2] In addition, we think it is axiomatic that, in the realm of the sale of goods, shipment by the seller and acceptance or return by the buyer deserve "treatment as a unit" based on "business understanding or usage."

¶ 19. Liteway alleged sufficient information in its first complaint for us to conclude there was the single transaction as described above. It alleged that it sold fixtures to Menard on credit pursuant to a contract, that Menard accepted the goods, that Liteway sent invoices for payment, and that Menard refused to pay for the items. Menard's claimed return for credit of these items is part of the transaction Liteway pled.

---

[2] Although there are multiple invoices at issue, they are sufficiently a "series" of transactions that we may consider a single transaction for claim preclusion analysis. Indeed, the parties do not provide any argument in their briefs based on individual invoices.

## Whether Issues in the Second Suit Could Have Been Raised in the First

¶ 20. Next, we must consider whether Menard's claims could have been litigated in the first suit. Transactional analysis requires the presentation in the action of all material relevant to the transaction without artificial confinement to any substantive theory or kind of relief. *Northern States*, 189 Wis. 2d at 555. If the present claim arose from the same transaction as in the former action, the present claim is barred even though the second plaintiff is prepared (1) to present evidence or grounds or theories not presented in the first action or (2) to seek remedies or relief not demanded in the first action. *Parks*, 171 Wis. 2d at 735. Thus, regardless of the theories or forms of relief originally pursued, claim preclusion bars subsequent litigation arising from a single transaction or series of transactions. *Post*, 157 Wis. 2d at 658.

¶ 21. Menard argues that its claim for returns arises from equitable and statutory bases and therefore differ from Liteway's initial claim. Additionally, Menard argues the UCC governs its returns and that Liteway has been unjustly enriched. These, however, are nothing more than affirmative defenses and counterclaims —various theories or kinds of relief counterposed to Liteway's claim. Indeed, the trial court here correctly concluded that these all could have been raised in the first action.[3]

---

[3] *National Operating, L.P. v. Mutual Life Ins. Co.*, 2001 WI 87, ¶ 68, 244 Wis. 2d 839, 630 N.W.2d 116, states that when there is a declaratory judgment, claim preclusion applies only to

¶ 22. An exception to claim preclusion exists when new facts manifest themselves, giving rise to a new claim. Claim preclusion is limited to the facts known at the time of the initial judgment. *See* 50 C.J.S. *Judgment* § 751 (1997). Thus, Menard claims that when it discovers goods are defective, it may subsequently return them for credit. That may generally be the case and appears to have been the arrangement before the relationship here deteriorated. However, Menard expands this argument and claims here that when it returned goods for credit, a situation arose where Liteway had been paid *and* had received the goods back.

¶ 23. Menard does not demonstrate that its legal analysis is supported by its necessary factual underpinnings. In its complaint, Menard alleged "Liteway has been unjustly enriched by both being paid for the product and then getting the product back." Menard then explains in its brief:

issues actually litigated, not issues that could have been litigated. The trial court, without elaboration, stated that the default judgment in this case was analogous to a declaratory judgment and determined that claim preclusion did not apply because the issue of Menard's offset or credit had not actually been litigated.

We do not see the similarity in this case between a default judgment and a declaratory judgment. Menard does not attempt to explain the similarities, although it urges us to apply *National Operating*. The difficulty for Menard, though, is that *National Operating* not only involved a declaratory judgment but also acknowledged the rule for claim preclusion based on default judgments as stated in *A.B.C.G. Enters. v. First Bank SE, N.A.*, 184 Wis. 2d 465, 481, 515 N.W.2d 904 (1994), and discussed and applied in the main text of this opinion. *National Operating*, 244 Wis. 2d 839, ¶ 69.

> The Menard lawsuit in fact continues with the presumption that . . . Menard owed the money under the invoices. What the second lawsuit covers is the subsequent "transaction" wherein, at a later date, the Liteway product was returned . . . . Once Liteway received the product, a situation arose wherein Liteway had been paid for the product and received the product back . . . .

¶ 24. First, Menard provides no record cites to support its claim of returns or to clarify this argument. At the time Menard filed its complaint, it does not appear Liteway had been paid. All Liteway had was the stayed judgment; the court records indicate the judgment was not satisfied until November 16, 2001, *after* Menard's complaint alleged Liteway had been paid. Alternatively, it is possible that Menard made this argument in anticipation of satisfying the judgment; that is, it claimed it had returned the goods but knew it would end up having to pay for them under the judgment. However, this double payment or unjust enrichment argument is merely a defense or counterclaim to Liteway's original action.[4] Moreover, it is manifestly inappropriate to allege future facts as though they were historical facts.

---

[4] To the extent Menard's argument relates to a timeline wherein the judgment was satisfied and then items were returned, Liteway was given a money judgment, not a replevin judgment. The money judgment was sufficient to dissolve the contract between the parties, giving Liteway a right to payment and Menard ownership of the goods, defective or not. *See Post v. Schwall*, 157 Wis. 2d 652, 659–60, 460 N.W.2d 794 (Ct. App. 1990). Permitting Menard to return the goods after judgment as a means of satisfying the judgment is to allow Menard to elect Liteway's remedy.

## Common Law Counterclaim Rule

■■■■■■

¶ 25. Menard argues that claim preclusion cannot apply because Wisconsin is a permissive counterclaim state. However, the supreme court has recognized the common law "compulsory counterclaim" rule. *A.B.C.G.*, 184 Wis. 2d at 473–74. This rule preserves the integrity and finality of judgments and the litigants' reliance on them by precluding a collateral attack upon a judgment in a subsequent proceeding when the attack would completely undermine the rights established in the initial judgment. *Id.* at 477. Claim preclusion prevents a defendant who may counterclaim in a prior action from bringing a subsequent action on the claim if the action would nullify the initial judgment or impair the rights established in the initial action. *Id.* at 480. Thus, we must consider whether Menard's suit impairs or nullifies Liteway's judgment in the first suit.

¶ 26. *A.B.C.G.* is fundamentally similar to this case and thus presents an instructive analogy. There, the supreme court wrote:

> Having concluded that there is an identity of parties and causes of action, we must now determine whether ABCG's claims, if successfully litigated, would nullify the prior foreclosure action or impair rights established in the initial action so as to trigger the application of res judicata. Essentially, ABCG alleges that the original foreclosure was improper. First Bank established the validity of ABCG's mortgage obligation; ABCG claims that its obligation was not valid because of misrepresentations by First Bank. First Bank established that ABCG was in default; ABCG alleges that absent the Bank's action, it would not be in default. Finally, First Bank established the amount at issue in the mortgages; ABCG attempts to put the amount at issue again by

alleging that payments were not properly received and applied to the mortgage debt. A judgment in favor of ABCG would thus directly undermine the original default judgment in which the court held that under the circumstances, foreclosure was proper.

If we were to allow ABCG to recover damages from First Bank, or if we were to grant other "equitable" remedies (as ABCG requests), the judgment awarding First Bank the amounts due on the properties and additional costs would be rendered meaningless. If a court found the mortgages invalid or First Bank to have caused the default, First Bank could be essentially forced to return its previous recovery. In the interest of equity and finality, we hold that ABCG is barred from raising its present claims against First Bank.

*Id.* at 482–83.

¶ 27. Here, we must consider whether Menard's claims, if successfully litigated, would nullify the prior action or impair rights established so as to trigger the application of claim preclusion. Essentially, Menard alleges that the original judgment was improper. Liteway pled Menard's obligation on the invoice, which Menard claims is invalid because of defective materials. Liteway established Menard was in default in the first case. Finally, Liteway established the amount at issue in the invoices in its pleadings. Menard attempts to put the amount at issue again by alleging that returns were not properly received and credited to the debt. A judgment in favor of Menard would thus directly undermine the original default judgment that Judge Wahl determined to be proper under the circumstances.

¶ 28. If we were to allow Menard to recover damages from Liteway now, or if we were to grant other "equitable" remedies, the judgment awarding Liteway

the amounts due on the invoices would be rendered meaningless. If the court found the invoices invalid, Liteway could be essentially forced to return its previous recovery. In the interest of finality, we conclude that Menard is barred from raising its present claims against Liteway.

## Fundamental Fairness

¶ 29. Menard argues, and the trial court agreed, that it is patently unfair to prohibit it from raising its issues of return for credit in the second case. Claim preclusion does have fairness as an essential principle and must never be applied to deprive a party of the opportunity for a full and fair determination. *Manu-Tronics v. Effective Mgmt. Sys.*, 163 Wis. 2d 304, 317 n.9, 471 N.W.2d 263 (Ct. App. 1991).

¶ 30. However, Judge Wahl stayed enforcement of the default judgment for nearly a year to allow Menard to try to resolve the issue of the amount due with Liteway, but noted that Menard continued to try to litigate and avoid the effects of its default. After nearly a year on hold, Judge Wahl lifted the stay. Menard did not even wait to attempt to appeal the default judgment. Instead, Menard prosecuted this action before Liteway's case was finalized. Judge Stark concluded Judge Wahl had simply based his judgment on the amounts Liteway pled without allowing Menard to show otherwise.

¶ 31. Whether the trial court applied a proper legal standard in determining damages is a question of law that we would review de novo if the case were

submitted to us. *See Jauquet Lumber Co. v. Kolbe & Kolbe Millwork Co.*, 164 Wis. 2d 689, 703, 476 N.W.2d 305 (Ct. App. 1991). The method of calculation is not, therefore, to be collaterally challenged in another branch of the trial court. Liteway should not be penalized for Menard's strategic miscalculations. In addition, it appears that Judge Wahl gave Menard significant latitude before finally allowing Liteway to collect on the judgment. We conclude that under these circumstances, it would not be fundamentally unfair to preclude the claim Menard inexcusably neglected to pursue in the first action.

*By the Court.*—Judgment and order reversed.