COURT OF APPEALS
DECISION
DATED AND FILED

August 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP751**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV539**

IN COURT OF APPEALS
DISTRICT IV

---

DESJURDIN LACEY AND MILDRED LACEY,

    PLAINTIFFS-APPELLANTS,

 V.

CREDIT ACCEPTANCE COMPANY,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Reversed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In 2016, Desjurdin Lacey entered into a retail installment agreement ("the contract") that required him to make payments on a

used car. He defaulted on the contract. In 2019, Credit Acceptance Corporation filed an action seeking a deficiency judgment on the contract and obtained a money judgment ("the judgment") against Lacey. In 2022, Desjurdin Lacey and his spouse, Mildred Lacey, obtained an order from the Dodge County Circuit Court prohibiting creditors that included Credit Acceptance from garnishing Desjurdin Lacey's wages.

¶2 Later in 2022, Desjurdin Lacey and Mildred Lacey initiated this action. The Laceys allege that Credit Acceptance violated provisions of the Wisconsin Consumer Act and engaged in civil theft by allegedly continuing garnishment efforts against Desjurdin Lacey's wages, despite the fact that Credit Acceptance had been placed on notice of the court order prohibiting such garnishment. The circuit court order granted a motion by Credit Acceptance to compel arbitration of the Laceys' current claims, based on an arbitration clause contained in the contract. The Laceys appeal.

¶3 Applying the merger doctrine, we conclude that Credit Acceptance cannot rely on the arbitration clause contained in the contract to compel arbitration in this action. This is because Credit Acceptance's contractual right to arbitrate the Laceys' claims, which relate to Credit Acceptance's alleged enforcement of the judgment it obtained in 2019, merged into the judgment. Accordingly, we reverse the order dismissing the action in order to allow arbitration.

## BACKGROUND

¶4 Desjurdin Lacey defaulted on the 2016 contract to purchase a used minivan. In January 2019, Credit Acceptance sued to collect on the outstanding balance, and in February it obtained a money judgment of $10,588.98. Based on

2

this deficiency judgment, Credit Acceptance began garnishing Desjurdin Lacey's wages from his job at a retail store.

¶5      In August 2022, more than three years after Credit Acceptance obtained the money judgment, the Laceys commenced a voluntary amortization of debts proceeding under WIS. STAT. ch. 128 (2021-22) in Dodge County Circuit Court.[1]  An affidavit of debts that the Laceys attached to the petition included a debt of $5,384.09 to Credit Acceptance, representing what the Laceys averred to be the remaining balance due on the judgment.  On September 14, 2022, the court issued an order appointing a trustee and enjoining creditors from conduct that included enforcing a garnishment to collect debts that were scheduled in the ch. 128 proceeding.

---

[1]  Under WIS. STAT. § 128.21, a person whose main income is from wages or salary may commence a circuit court proceeding based on a representation that

> … the person is unable to meet current debts as they mature, but is able to make regular future payments on account sufficient to amortize the debts over a period of not more than 3 years, and that he or she desires the aid of the court to effectuate the amortization.  The petition shall also set forth the names and addresses of any creditors who have levied any executions, attachments or garnishments, and of any garnishees, and the court shall forthwith, by order, require that proceedings for the enforcement of the executions, attachments or garnishments be stayed during the pendency of proceedings under this section.

WIS. STAT. § 128.21(1).  After such a petition is filed, the court appoints a "disinterested trustee" to come up with a plan for the repayment of debts, "and until the dismissal of the proceedings, no execution, attachment or garnishment may be levied or enforced by any creditor seeking the collection of any claim which arose prior to the proceedings, unless such claim is not included by the debtor in the claims to be amortized."  Sec. 128.21(2), (3).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶6     In December 2022, the Laceys filed the action in this case.  The complaint claims that Credit Acceptance violated WIS. STAT. § 427.104(h) and (j) of the Wisconsin Consumer Act, and committed civil theft, by making garnishment efforts against Desjurdin Lacey's wages, despite the fact that Credit Acceptance had been placed on notice of the order prohibiting such garnishment.

¶7     Credit Acceptance filed a motion requesting an order compelling arbitration of the claims in this action, based on an arbitration clause included in the contract.  The Laceys opposed the motion.

¶8     In a written order, the circuit court granted the motion to compel arbitration.

## DISCUSSION

¶9     One argument advanced by the Laceys in the circuit court against Credit Acceptance's motion to compel arbitration was the following.  The arbitration clause in the contract—and all of the other rights and obligations created for the parties by the contract—"dissolve[d]" when those rights and obligations were "converted" into the money judgment that Credit Acceptance sought and obtained to resolve its action based on the contract.  On appeal, the Laceys renew this argument.  They argue that the circuit court erred in compelling arbitration "based solely on" the contract, because the contract was "merged into a money judgment in a separate circuit court action" from this one.  On the record of this case, as argued by the parties, we agree that the motion to compel arbitration should be denied.

¶10    A motion to compel arbitration involves contract interpretation and the determination of substantive arbitrability, which are issues that we review de

4

novo. ***Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC***, 2018 WI 112, ¶38, 384 Wis. 2d 669, 920 N.W.2d 767. In considering the issue that we determine to be dispositive under the merger doctrine, we are not called on to interpret the meaning of any specific provision in the contract here, including the arbitration clause. Instead, we address only the legal issue of whether the merger doctrine applies based on the undisputed facts. *See* ***Bank of Sun Prairie v. Marshall Dev. Co.***, 2001 WI App 64, ¶5, 242 Wis. 2d 355, 626 N.W.2d 319 (applying standard de novo review on summary judgment to a merger issue).

¶11 Turning to the substance of the merger doctrine, this court in 1985 adopted the doctrine as formulated in the RESTATEMENT (SECOND) OF JUDGMENTS (1982).[2] ***Waukesha Concrete Prods. v. Capitol Indem. Corp.***, 127 Wis. 2d 332, 343-44, 379 N.W.2d 333 (Ct. App. 1985). The doctrine "is a common-law principle applied throughout all state and federal forums, in a basically consistent manner." ***Production Credit Ass'n v. Laufenberg***, 143 Wis. 2d 200, 205, 420 N.W.2d 778 (Ct. App. 1988).

¶12 The merger doctrine as adopted in Wisconsin provides:

> When a valid and final personal judgment is rendered in favor of the plaintiff:
>
> (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although [the plaintiff] may be able to maintain an action upon the judgment; and

---

[2] The American Law Institute published the first version of this restatement in 1942 and the RESTATEMENT (SECOND) OF JUDGMENTS in 1982. *See* https://www.ali.org/publications/show/judgments/. We cite to the 1982 version, and for its commentary we refer to the version updated in June 2024. We refer to all citations to this version and its commentary as the "RESTATEMENT."

> (2) In an action upon the judgment, the defendant cannot avail [the defendant itself] of defenses [that the defendant] might have interposed, or did interpose, in the first action.

*Waukesha Concrete*, 127 Wis. 2d at 343-44 (quoting RESTATEMENT § 18). One comment to the current version of the RESTATEMENT elaborates in the following terms:

> When the plaintiff recovers a valid and final personal judgment, [the plaintiff's] original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be "merged" in the judgment. It is immaterial whether the defendant had a defense to the original action if [the defendant] did not rely on it, or if [the defendant] did rely on it and judgment was nevertheless given against [the defendant]. It is immaterial whether the judgment was rendered upon a verdict or upon a motion to dismiss or other objection to the pleadings or upon consent, confession, or default.

RESTATEMENT § 18 cmt. a. As this court has stated, "[b]y operation of merger, upon entry of judgment, the contract sued upon loses all of its vitality and ceases to bind the parties to its execution." *Production Credit*, 143 Wis. 2d at 205.

¶13 The merger doctrine was applied in *Waukesha Concrete* in the context of a claim by a supply company against the surety of a contractor. *Waukesha Concrete*, 127 Wis. 2d at 344. The supply company as creditor sought to enforce the interest rate based on terms in its contract with the contractor, which called for a higher rate post-judgment. *Id.* at 343. However, the contractual interest rate was extinguished upon the entry of a final judgment, and in its place a "new cause of action based upon the judgment" called for a new rate of interest at the lower statutory rate. *Id.* at 344. Turning to *Production Credit*, this court concluded there that, once rights and obligations in a contract have been merged into the judgment, post-merger attempts to collect costs and attorney's fees that

were authorized only by the merged contract could not be sustained. *See Production Credit*, 143 Wis. 2d at 204-07 ("In the absence of an express agreement otherwise, the obligation of a debtor to pay the creditor's costs and fees of collection or foreclosure is merged in a judgment in favor of the creditor.").

¶14    With this precedent in mind, and based on the briefing of the parties, we conclude that the merger doctrine applies here to preclude enforcement of the arbitration clause contained in the contract. In the words of the RESTATEMENT formulation, "a valid and final personal judgment" was "rendered in favor of" Credit Acceptance. Therefore, Credit Acceptance "cannot thereafter maintain an action on" "any part" of "the original claim," which was based on the contract, except that Credit Acceptance can "maintain an action upon" the money judgment it obtained. *See* RESTATEMENT § 18.

¶15    It is true that Credit Acceptance is not now pursuing a new action against the Laceys. The Laceys are suing Credit Acceptance. But the nature of the new action is exclusively directed at Credit Acceptance's alleged conduct in enforcing the judgment. There can be no dispute that the arbitration clause in the contract here formed, in the words of the test under the merger doctrine, "any part" of the contractual benefits for which that the parties are presumed to have bargained. As Credit Acceptance itself points out, the claims in the current action that it seeks to arbitrate did not even accrue until long after the contract action was resolved in the judgment that Credit Acceptance sought and obtained. Here, through "operation of merger, upon entry of judgment, the contract sued upon [lost] all of its vitality and cease[d] to bind the parties to its execution." *See Production Credit*, 143 Wis. 2d at 205.

¶16    We now address Credit Acceptance's arguments to the contrary, which are not robustly developed.

¶17    Credit Acceptance argues that the Laceys failed to preserve this merger doctrine argument by failing to raise it in the circuit court. To be sure, the argument that the Laceys made in the circuit court on this issue was not as well developed as the argument that they present on appeal. But we now explain why we conclude that the argument was sufficiently preserved in the circuit court.

¶18    Appellate courts strive to avoid reversals that would "blindside trial courts ... based on theories which did not originate in their forum," and therefore it is not enough to raise general, related issues in order to preserve particular arguments for appellate review. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) (explaining that the forfeiture rule requires that, to preserve its arguments, a party must "make all of [its] arguments to the trial court"). This court need not, but typically will, reject arguments raised for the first time on appeal. *See State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702 (forfeiture is a rule of judicial administration and we may exercise discretion to address issues raised for the first time on appeal).

¶19    As we have noted, the Laceys argued in the circuit court that the arbitration clause in the contract was "dissolve[d]" when the rights and obligations of the parties under the contract were "converted" into the money judgment that Credit Acceptance sought and obtained to resolve the action on the contract. The Laceys did not use the word "merge" or "merger," but this recognizably stated the merger concept.

¶20    Further, in support of their argument in the circuit court, the Laceys cited a footnote in *Menard, Inc. v. Liteway Lighting Prods.*, 2004 WI App. 95,

273 Wis. 2d 439, 685 N.W.2d 365, *abrogated on other grounds by **Kruckenberg v. Harvey***, 2005 WI 43, 279 Wis. 2d 520, 694 N.W.2d 879, and also highlighted one opinion cited in the **Menard** footnote, **Post v. Schwall** 157 Wis. 2d 652, 460 N.W.2d 794 (Ct. App. 1990). The Laceys cited this authority for the proposition that a "money judgment was sufficient to dissolve the contract between the parties." *See **Menard***, 273 Wis. 2d 439, ¶24 & n.4; ***Post***, 157 Wis. 2d at 659-60.[3] At and around the cited passages in ***Post***, this court addressed "res judicata" principles that evoke the merger doctrine.[4] *See **Post***, 157 Wis. 2d at 658-60.

---

[3] More specifically, footnote 4 of ***Menard*** states:

> To the extent Menard's argument relates to a timeline wherein the judgment was satisfied and then items were returned, Liteway was given a money judgment, not a replevin judgment. *The money judgment was sufficient to dissolve the contract between the parties, giving Liteway a right to payment and Menard ownership of the goods, defective or not. See **Post v. Schwall***, 157 Wis. 2d 652, 659-60, 460 N.W.2d 794 (Ct. App. 1990). Permitting Menard to return the goods after judgment as a means of satisfying the judgment is to allow Menard to elect Liteway's remedy.

***Menard, Inc. v. Liteway Lighting Prods.***, 2004 WI App. 95, ¶24 n.4, 273 Wis. 2d 439, 685 N.W.2d 365 (emphasis added), *abrogated on other grounds by **Kruckenberg v. Harvey***, 2005 WI 43, 279 Wis. 2d 520, 694 N.W.2d 879.

[4] As this court has explained, under the approach used in the RESTATEMENT, the merger doctrine "is an aspect of res judicata":

> the term "res judicata" is used in a broad sense to include three concepts: "merger—the extinguishment of a claim in a judgment for plaintiff; bar—the extinguishment of a claim in a judgment for defendant; and issue preclusion—the effect of the determination of an issue in another action between the parties on the same claim … or a different claim…."

***Bank of Sun Prairie v. Marshall Dev. Co.***, 2001 WI App 64, ¶9 & n. 5, 242 Wis. 2d 355, 626 N.W.2d 319 (quoting RESTATEMENT ch. 3, intro. note (1982)).

9

¶21    On this record, we conclude that reversal on this issue would not blindside the circuit court. Moreover, our addressing the issue is not unfair to Credit Acceptance, which had an opportunity in the circuit court, and now again on appeal, to provide persuasive arguments that the merger doctrine does not apply here.

¶22    Moving to the merits of the merger argument, Credit Acceptance does not rely on any particular language in the arbitration agreement to support its position that the merger doctrine does not apply, and therefore we do not reproduce that language in detail. It is sufficient to acknowledge that the contract contains broad language entitling either side to arbitrate any "dispute" "arising out of or in any way related to" the contract. Further, given our conclusion that the merger doctrine applies, we need not reach separate disagreements between the parties about how the contract defined "a dispute" that could be arbitrated at the election of either side of the contract, about whether Credit Acceptance waived arbitration through its litigation conduct, or about whether the waiver issue must be decided by a court or an arbitrator.

¶23    Credit Acceptance correctly notes that in both *Production Credit* and *Waukesha Concrete*, as reflected in our summaries above, the topics that were deemed merged did not include a right to arbitration. But Credit Acceptance fails to develop and support an argument that any aspect of the merger doctrine as adopted in Wisconsin excludes arbitration as a topic that may be subject to the merger doctrine.

¶24    Nor does Credit Acceptance distinguish Wisconsin case law by directing us to material differences between the contract claims here and the contract claims that have been deemed merged into judgments in prior cases. For

example, Credit Acceptance does not identify how the Laceys' claims relate to obligations of either party under the contract that were not resolved by the judgment. Credit Acceptance accurately observes that the parties bound themselves in the contract to the obligations of the arbitration clause. But the only topics that Credit Acceptance now seeks to arbitrate (its alleged wrongdoing in collection efforts) are based on the judgment that resulted from the already-litigated breach of contract claim. For similar reasons, in ***Production Credit***, we rejected the creditor's argument that the contractual right to attorney's fees and costs was not merged into the judgment because this right was "separable" from the debtor's obligation to make loan payments. *See **Production Credit***, 143 Wis. 2d at 206. This was because the obligation to pay fees and costs "arose out of the loan agreement," which "contemplated [only] one indebtedness." *See **id.***

¶25 In order for Credit Acceptance to prevail here, it would need to identify an exception to the merger doctrine, or a way to distinguish the merger doctrine case law, because the merger doctrine as described in Wisconsin cases is generally sweeping and unqualified: "[b]y operation of merger, upon entry of judgment, the contract sued upon [lost] *all* of its vitality and *cease[d] to bind* the parties to its execution." *See **id.*** at 205 (emphasis added).

¶26 ***Bank of Sun Prairie*** is an example of a case in which an argument based on the merger doctrine was denied, but Credit Acceptance fails to develop an argument that any statement in that case supports its argument here. To the contrary, the discussion in ***Bank of Sun Prairie*** implicitly treats the merger doctrine as generally sweeping in its reach. Starting from that implicit premise, the opinion carefully explains why the doctrine does not apply in one particular context involving enforcement actions for property held as collateral for a debt. In doing so, we addressed at length, and rejected, an argument that an action for

11

foreclosure of a mortgage should be dismissed based on the merger doctrine because the mortgage holder had previously obtained a deficiency judgment in a foreclosure action on a different mortgage, involving different property, that secured the same debt. *Bank of Sun Prairie*, 242 Wis. 2d 355, ¶¶6-21; *see id.*, ¶¶8-9 (citing RESTATEMENT cmt. g, which provides in part that "[t]he creditor retains the right to enforce a lien or gain possession of property held as collateral for the debt"). The analysis turned on legal rules specifically permitting an action to foreclose on a mortgage securing a debt that has been reduced to a judgment, and the court's conclusion was that the judgment did not preclude the mortgage holder "from seeking foreclosure on a different mortgage on different property that secures the same debt." *Id.*, ¶¶8-21. As noted, Credit Acceptance does not explain why the arbitration clause here is not subject to the merger doctrine, either in a manner analogous to the enforcement of a lien on another property as in *Bank of Sun Prairie*, or through some other category of exclusions to the doctrine.

¶27 Separately, Credit Acceptance briefly cites as persuasive authority two federal district court opinions. We conclude that neither opinion is persuasive here.

¶28 *Morrison v. Midland Funding, LLC*, No. 20-CV-6468-FPG, 2021 WL 2529618 (W.D.N.Y. June 21, 2021), is readily distinguishable, and it is also not persuasive. In *Morrison*, a credit card agreement that was the subject of a default judgment and subsequent collection efforts contained a provision which stated that the eventual creditor "will not require [the eventual debtor] to arbitrate[ in] a case we file to collect money you owe to us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate." *Id.* at *4. This aspect of the facts in *Morrison* significantly distinguishes it from this case. Here, we do not have an underlying contract that

explicitly contemplated arbitration in the context of a later lawsuit alleging wrongdoing in collection efforts on the judgment resulting from an action on the contract. As acknowledged above, the contract here contains broad language entitling either side to arbitrate any "dispute" "arising out of or in any way related to" the contract. But unlike the contract in *Morrison*, the contract here does not specifically contemplate the Laceys eventually claiming wrongdoing in response to collection efforts made on a judgment.

¶29    Further, the court in *Morrison* does not satisfactorily address the fact that the collection actions sought to be arbitrated there (involving claims filed under the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq.) were not taken pursuant to the credit card agreement that had been reduced to a default judgment, but instead the collection actions were taken pursuant to the default judgment. *See Morrison*, No. 20-CV-6468-FPG, at **3-5. For example, the court in *Morrison* states that the merger doctrine could not apply to avoid enforcement of the arbitration clause, because this would render contracts "meaningless whenever a party breached any portion of an agreement and the other party obtained a judgment on such breach." *Id.* at *4. This concern by the court in *Morrison* may be implicitly premised on the scenario in which a lawsuit based on a contract is resolved in a manner that produces a judgment as to some claims, but reserves the parties' rights regarding one or more additional claims. Credit Acceptance does not suggest that any such claim-splitting event occurred here at the time it sought and obtained the judgment on the contract. And we see no basis

to think that there was.[5]   In short, Credit Acceptance gives us no reason to conclude that all terms of the contract here, including the arbitration clause, were not merged into the judgment.  Therefore, at least so far as Credit Acceptance argues its position, the reasoning in *Morrison* does not apply here in the face of clear Wisconsin law defining the merger doctrine.

¶30   Similarly, we do not consider persuasive the briefly stated reasoning in the other opinion cited by Credit Acceptance, and the opinion may rest on California law that is not operative in Wisconsin.  *See Muschetto v. Kenosian & Miele, LLP*, No. SACV-17-1020 JVS (DFMx), *3, 2017 WL 10562628 (C.D. Cal. Oct. 23, 2017).  At bottom, the court in *Muschetto*, like the court in *Morrison*, fails to provide a satisfactory explanation for treating an arbitration clause as a term of a contract that is necessarily, or even arguably, what the court deems to be "separate from those [terms] that resulted in a prior judgment."  *See Muschetto*, No. SACV-17-1020 JVS (DFMx), *3.  In the instant case, the parties accepted all of the rights and obligations stated in the terms contained in a single contract, and Credit Acceptance's action on that contract resulted in a single judgment.  Under Wisconsin law, all claims that either side could make under that contract merged

---

[5] We need not, and do not, express any view about whether or how Credit Acceptance might have been able to preserve its arbitration rights through a different approach to the contract or to the litigation that produced the judgment that it sought and obtained.  *See* Milton R. Friedman, FRIEDMAN ON CONTRACTS AND CONVEYANCES OF REAL PROPERTY § 8.18 (7th ed. 2005) (stating that "[t]he effect of merger may be qualified by agreement").  We need not reach that issue because we are presented with no evidence that the parties here agreed or took any steps to limit the effect of the merger doctrine before or at the time the judgment was entered.  That is, Credit Acceptance does not suggest any manner in which the parties purported to distinguish among the various rights that they had established in the single contract—including singling out the arbitration clause for special consideration—by the time that Credit Acceptance sought and obtained a single judgment to resolve its lawsuit against Desjurdin Lacey.

into the judgment that Credit Acceptance sought and obtained, including any claims that either party might later want to make to enforce the arbitration clause.

## CONCLUSION

¶31 For all of these reasons, we reverse the circuit court's order granting the motion to compel arbitration.

*By the Court*.—Order reversed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.